Peter Strojnik, 6464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| PETER STROJNIK, P.C., an Arizona Corporation; PETER STROJNIK, individually,<br><br>Plaintiff,<br><br>vs.<br><br>ABC DEFENDANTS 1-10 d/b/a/ TRIPLE PLAY STOCK ALERT, a fictitious entity; UNIDENTIFIED DEFENDANTS 11-50,<br><br>Defendants. | ) NO.<br>)<br>)  **CLASS ACTION COMPLAINT FOR**<br>)  **INJUNCTIVE RELIEF AND FOR**<br>)  **DAMAGES ARISING OUT OF**<br>)  **TRANSMISSION OF UNSOLICITED**<br>)  **FAXES - 47 U.S.C. § 227; AND**<br>)<br>)  **DECLARATORY JUDGMENT; AND**<br>)<br>)  **CIVIL CONSPIRACY; AND**<br>)<br>)  **AIDING AND ABETTING**<br>)<br>)<br>)<br>) |

## THE PARTIES, JURISDICTION AND VENUE

1) Plaintiff PETER STROJNIK, P.C. is an Arizona Professional Corporation authorized to and conducting business in Maricopa County, State of Arizona. PETER STROJNIK is an individual owner of the e-mail address Strojnik@aol.com. (Cumulatively "Plaintiff")

2) ABC Defendants 1-10 are illegal stock manipulators who use a fictitious name TRIPLE PLAY STOCK ALERT for the purpose of concealing their identity to avoiding liability for

illegal stock manipulation through transmissions of mass faxes in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*

3) UNIDENTIFIED DEFENDANTS 11-50 are conspirators, aiders and abettors of ABC Defendants 1-10 d/b/a/ Triple Play Stock Alert.

4) Triple Play Stock Alert transmitted, by itself or with the aid, assistance and agreement with others, the Unsolicited Faxes that are the subject matter of this Complaint.

5) This Court has personal jurisdiction over Defendants by virtue of the following facts:

   a) Defendants caused at least one unsolicited fax to be sent to at least one recipient in the State of Arizona; and

   b) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

   c) It would be extremely burdensome for Plaintiff to access another forum; and

   d) Upon information and belief, Defendants continuously and systematically sent unsolicited faxes to the State of Arizona; and

   e) Defendants purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

   f) Defendants may be hailed in court here under the liberal "effects" personal jurisdiction test in this tort action; and

   g) Defendants did and should have foreseen being hailed to Court in the State of Arizona.

6) As more fully set forth below, on or about February 14, 2008, Defendants sent an unsolicited facsimile to Plaintiff, Exhibit 1, in violation of TCPA ("Unsolicited Fax"). The

Unsolicited Fax on its face states that the sender received 200,000 shares of Signalife stock and that it paid the sum of $33,750 to distribute the Unsolicited Fax.

7) The transmission of the Unsolicited Fax is an illegal stock manipulation device.

   a) Upon recently acquired information and belief, Plaintiff alleges that the cost for transmitting each unsolicited fax is between 1.1 and 1.5 cents.

   b) The Unsolicited Fax discloses the value of each share of stock as follows:

   AMEX: **SGN**
   Recent Price: $.75
   AVG. VOL. 205,000 (90 DAY)

   c) Arithmetic computation discloses that Defendants sent out the following number of faxes and that their liability pursuant to TCPA is as follows:

|  |  | Faxes sent out at 1.1 cents each (000) | Faxes sent out at 1.5 cents each (000) | Liability at $500 per fax (000) | Liability at $1,500 per fax (000) |
|---|---|---|---|---|---|
| **Cash** | 33,750 | 3,068 | 2,250 | 1,125,000 | 3,375,000 |
| **Stock** | 150,000 | 13,363 | 10,000 | 5,000,000 | 15,000,000 |
| **TOTAL** | **183,750** | **16,431** | **12,250** | **6,125,000** | **18,375,000** |

   d) According to the above chart, Defendants transmitted between 12,250,000 and 16,431,000 Unsolicited Faxes.  Pursuant to the TCPA, Defendants are liable in statutory damages between 6 and 18 billion dollars.

8) This Court has original jurisdiction over this matter by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d) requiring minimum diversity and the amount in controversy exceeding 5 million dollars. Actual diversity exists between Plaintiff and Defendants.

9) The venue is proper in this Court pursuant to 28 U.S.C. §§1391 *et seq.*

### CLASS ACTION ALLEGATIONS

10) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

11) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA.  This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

12) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

13) Plaintiff operates a law business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

14) Defendants are, in part, in the business of marketing the stock of Signalife, Inc., a Delaware Corporation trading on the American Stock Exchange under symbol SGN.

15)  On or about February 14, 2008, Plaintiff received an unsolicited fax from Defendants a copy of which is appended as Exhibit 1.  The sending of the unsolicited fax is unlawful under the TCPA.

16) As a direct and proximate result of Defendant's conduct heretofore described, Plaintiff and the members of the Class and the subclass suffered damages due to the loss of paper and

toner, the temporary loss of use of their facsimile machine and the potential loss of business while its facsimile machine was in use.

17) This Class Action is brought and may be maintained pursuant to Rule 23, Federal Rules of Civil Procedure.  Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement promoting Signalife, Inc. stock, AMEX symbol SGN, via unsolicited facsimile transmissions

18) Plaintiff and members of the Class were recipients of unsolicited facsimiles in violation of the TCPA.

19) This action is properly brought as a class action pursuant to Rule 23, F.R.C.P., for the following reasons:

a) The facsimile in issue, Exhibit 1, states on its face that the sender of the fax was marketing 200,000 shares of Signalife stock and paid $33,750 for sending out unsolicited faxes. Upon information and belief, a fax marketing firm sends out each fax at a cost of between 1.1 cents and 1.5 cents.  This means that Defendants sent out between 12,250,000 and 16,431,000 Unsolicited Faxes.

b) The class is so numerous that joinder of all members is impracticable; and

c) There are questions of law or fact common to the class, to wit:

    i) Whether Defendant violate the TCPA when sending the unsolicited faxes in the form attached as Exhibit 1 or in a similar manner; and

    ii) Whether the facsimiles that are the same or similar to Exhibit 1 constitute "unsolicited advertisements" under TCPA; and

iii) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

iv) Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

v) Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

vi) Whether Plaintiff and the members of the Class are entitled to declaratory relief.

d) The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same fax; and

e) The named Plaintiff will fairly and adequately protect the interests of the class because:

i) Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

ii) Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv) Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class.

f) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

g) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them.  Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendant, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief.  Hence, a class action is the only feasible means of recovery for the members of the Class. Furthermore, without a class action, the members of the Class will continue to suffer damages and Defendant will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

h) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery.  The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendant's records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act)
(47 U.S.C. § 227 *et seq.*)

20) Defendants or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone facsimile machines to Plaintiff and the members of the Class.

21) On information and belief, in each instance Defendants transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines. For example:

a) Defendants knew that the transmitted faxes were advertisements;

b) Defendants participated in the preparation of their content;

c) Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class;

d) Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines; and/or

e) Defendants knew or had reason to know that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission.

22) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages.  Under the TCPA, Plaintiff and each member of the Class are entitled to injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

23) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

### COUNT TWO
(Declaratory Judgment)

24) Plaintiff realleges all allegations heretofore set forth.

25) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq.* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.*

26) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' unsolicited fax transmissions.

27) Defendants claim, or may claim, that their conduct in sending unsolicited fax transmissions does not violate the TCPA.

28) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

29) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

30) Plaintiff claims that Defendants' practices violate the TCPA.

### COUNT THREE
(Civil Conspiracy)

31) Plaintiff realleges all allegations heretofore set forth.

32) Congress passed the 1934 Securities Act, 15 U.S.C. §§ 78a-78kk, to assure the disclosure of full and fair information to the investing public. In relevant part, Section 10(b) of the 1934 Act proscribed the "use or employ[ment], in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Like Section 10(b), Rule 10b-5 prohibits "any act . . . which operates or would operate as a fraud or deceit upon any person" and makes it illegal "[t]o make any untrue statement of a

material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b).

33) Defendants, their conspirators, aiders and abettors, caused to be transmitted the Unsolicited Fax, upon information and belief, in order to manipulate the SGN stock as to both value and volume.

34) Defendants' stock manipulation scheme was not disclosed to the investors and the potential investors through a filing of a Disclosure Form 8-K, and particularly section 8, item 8.01 thereof.

35) Defendants transmitted between 12,250,000 and 16,431,000 Unsolicited Faxes.  Pursuant to the TCPA, Defendants are liable in statutory damages between 6 billion and 18 billion dollars.

36) Plaintiff has identified two classes of stock manipulators who benefit by the illegal stock manipulation fax transmissions in issue here:

a)  The Company whose stock is being promoted by the Unsolicited Fax.  In the matter at hand, this class of beneficiaries consists of Signalife, Inc.; and/or

b)  The insiders and or shareholders of the company whose stock is being promoted by the Unsolicited Fax.  In the matter at hand, this class of beneficiaries consists of Signalife's insiders, officers, directors and/or shareholders.

37) Triple Play Stock Alert and (1) Signalife and/or (2) Signalife's insiders, officers, directors and/or shareholders ("Conspirators") agreed among themselves to engage in a course of conduct involving a violation of 47 U.S.C. § 227.

38) Conspirators agreed to illegally transmit the faxes to manipulate the SGN stock; they agreed to accomplish an unlawful purpose by unlawful means, causing damages to named Plaintiffs and the members of the Class.

39) Plaintiff and the members of the Class have been damaged by acts committed by the Conspirators pursuant to the civil conspiracy described above.

40) Conspirators' conduct was intentional and premeditated, intended to unjustly benefit Triple Play Stock Alert, Signalife and/or Signalife's insiders, officers, directors and/or shareholders at the expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Conspirators and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

## COUNT FOUR
(Aiding and Abetting)

41) Plaintiff realleges all allegations heretofore set forth.

42) Defendants aided and abetted one another as follows:

a) Triple Play Stock Alert committed a violation of the TCPA; and

b) Unidentified Defendants knew that the sender of the Unsolicited Faxes violated the TCPA; and

c) Unidentified Defendants substantially assisted or encouraged Triple Play Stock Alert in the following non-exclusive actions:

    i) They provided the information contained in the Unsolicited Fax; and

ii) They provided the opportunity to the sender of the Unsolicited Faxes to violate the TCPA; and

iii) They sought the benefits of the Unsolicited Faxes; and

iv) They accepted the benefits of the Unsolicited Faxes.

43) Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

44) Defendants are responsible to Plaintiff and the members of the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

45) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of the Plaintiff and the members of the Class, entitling Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

## RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; and

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c) For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual Unsolicited Fax received from Defendants; and

d) For judgment in the amount equal to three times the damages to Plaintiffs and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e) For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff or the Class; and

f) For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

g) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

h) For punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

i) For such other and further relief as the Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by a jury on all issues triable by a jury.

RESPECTFULLY SUBMITTED this 16th day of June, 2008.

PETER STROJNIK

_____
Peter Strojnik
Attorney for the Plaintiff

# TRIPLE PLAY STOCK ALERT!!

**February 2008**

## SIGNALIFE, INC.

AMEX: SGN
Recent Price: $.75
AVG. VOL. 205,000 (90 DAY)

**\*\*PATENTED SIGNAL TECHNOLOGY IN DIAGNOSTIC TESTING AND MONITORING OF PATIENTS!\*\***

Recipient of the Frost & Sullivan Technological
Innovation Award for 2006!! (Source: News 1/14/08)

**Don't Listen To Us**- GO TO YOUR FAVORITE FINANCIAL WEBSITE...
READ THE NEWS ON THIS STOCK NOW!!! RIGHT NOW!!!

**Signalife** & Athletes Foundation Dispatch Mobile Health Center to Super Bowl!

NFL Hall of Fame Legend Michael Irvin Joins **Signalife**-AFL Cardiovascular
Protection Team!

**Signalife** Receives FDA Clearance for OTC Non-Prescription Event Recorder
Device!

**ABOUT SIGNALIFE:**

**Signalife, Inc** is a life sciences company focused on the monitoring and
detection of disease through continuous biomedical signal monitoring. **Signalife** uses its
patented signal technology to design and develop medical devices that simplify and
reduce the costs of diagnostic testing and patient monitoring in an ambulatory setting.
Clear Data. Trusted Results. (Source: News 1/30/08)

**FINAL THOUGHTS:**

Could **Signalife** redefine how an industry works? Is that how big money is
made, finding undiscovered gems BEFORE the crowd rushes in?

**COULD THIS STOCK TRIPLE FROM HERE?** WHAT WOULD YOU DO WITH ALL THOSE
JUICY PROFITS?? **GO LOOK AT THE CHART!** DO YOU SEE ACCUMULATION?
THE ALERT IS ON!!! WATCH THIS STOCK TRADE!

## GO SGN!!!

Information herein may be forward looking within the meaning of Section 27A of the Securities Act of 1933 and Section 21B of the SEC Act of 1934. Statements involving discussions of future events. Don't rely on them to make a decision. Past performance isn't indicative of future results. SGN is a reporting company. SGN may be delisted from Amex. SGN has: an accumulated deficit, negative operating cash flow, related party transactions, no revenues in its recent quarter and the stock float is increasing. It isn't a revenue producing company. We received 200,000 free trading shares from a non-affiliate. We intend to sell all 200,000 shares now, which could cause the stock to go down, resulting in losses for you. We paid $33750 to send this report. SGN is a high risk stock. WARNING: You can lose money Buying SGN. This report shall not be taken as investment advice or solicitation. URGENT: Please read SGN's SEC filings before you invest.

If you received this fax in error, and would like to be removed permanently from our established contact database,
Please call **1-877-283-0449.**

# EXHIBIT 1